## STATE EX REL. OTTO L. ZIMMERMAN v. SOLDIERS BONUS BOARD.[1]

June 22, 1923.

No. 23,121.

**Relator a resident of Minnesota and entitled to a bonus.**

The findings of the Soldiers Bonus Board show that, through misunderstanding of legal principles and demonstrable mistakes of facts, it arrived at the erroneous conclusion that relator was not a resident of Minnesota, where he had lived continuously for 26 years when he registered under the Selective Service Act, where he continued to live until he obtained permission from the draft board to visit relatives in Canada on the promise to return when called, to which place he did return upon being called, and from whence he was inducted into the army.

Upon the relation of Otto L. Zimmerman the supreme court granted its writ of certiorari directed to the Soldiers Bonus Board to review its action in denying relator a soldier's bonus. Reversed.

*Todd, Fosnes & Sterling,* for relator.

*Clifford L. Hilton,* Attorney General, and *Albert F. Pratt,* Assistant Attorney General, for respondent.

[1]Reported in 194 N. W. 325.

HOLT, J.

Otto L. Zimmerman was born and lived in South Dakota until he was 5 years old, when his parents brought him to Cottonwood county, this state, where he resided for 26 years prior to his induction into the army of the United States. Under the Selective Service Act he registered for military service in Springfield township, Cottonwood county, this state, on June 5, 1917. The following November he sought and obtained permission from the draft board to go to Canada, with the understanding that he would keep the board advised of his address and be ready to report when called. He was notified to return shortly before June 25, 1918, and did so, being inducted on that date, and served honorably over seas until the war was over. He applied for a bonus, but the bonus board and the board of review denied the application on the ground that he was not a bona fide resident of this state when inducted. On certiorari the determination of the boards is here for review.

The only excuse for the finding that relator was not a resident of this state when inducted is this: The bonus board provided the applicants for bonus with forms containing 51 printed questions with small blank spaces for the answers and, at the end, to be subscribed and sworn to by the applicant. In the first application, in filling the space for question No. 20, which reads: "Legal residence at the time of enlistment, induction of Commission," relator inserted "9331-102 A. Ave. Edmonton City, Alta., Canada." On his second application he gave Windom, Minnesota, as his legal residence at the time of induction into army. There can be no question but that relator was a resident here when he registered for the draft. During 5 or 6 years immediately prior thereto he had lived continuously in the county of Cottonwood, farming on his own account. He voted in the district where he lived. After registering he desired to visit his parents and sister in Canada. The board found that both sister and parents had removed to Canada with the intention of making that country their permanent home. There is no evidence to that effect, unless it may be inferred from relator's statement that his parents were visiting their daughter

who then lived in Canada. The board found that applicant moved to Canada and joined the parents with the intention of wholly abandoning his Minnesota residence and of making his permanent home and residence in Canada; that he did establish his permanent home there and secured permanent employment; that he ever since maintained his permanent home there, and that relator had no intention when he reported to the draft board for induction into the service to re-establish his residence in Minnesota.

It is true that residency and citizenship do not necessarily go hand in hand. A citizen of Minnesota may take up his legal residence in Canada for a longer time than relator was there and still retain his citizenship here. The legislature gave the bonus only to those who were residents of the state when inducted into the military forces of the United States. Laws Sp. Sess. 1921, c. 49, as amended by c. 417. Here the board finds that relator was not a resident, but appears to have tied up that finding with others of no relevancy, having no support in the evidence. By so doing we think the board proceeded upon an erroneous view of the law which necessarily led to a wrong conclusion.

Relator stated that his sister lived in Edmonton in November, 1917, but there is not any evidence whatever that his parents had taken up a permanent residence there. The only evidence is that they were there on a visit with their daughter. But even if both sister and parents had their home in Canada, it does not in any manner conclude relator. He was 30 years old. He had farmed for himself for 6 years in Cottonwood county. He surely had established his home and residence there irrespective of what his parents or sister were doing. But what more natural than a visit to them before entering the army and a visit on returning therefrom. He was a single man, expecting to be inducted in the service any moment. He could not well undertake to carry on farming for 1918. Under such conditions he obtains leave from the draft board to visit his relatives in Canada until called. He takes no permanent position, but one which permits him, at any time, to respond to the draft call from his home place. There seems to us no room for finding that he abandoned his residence and home in this state.

Had he intended to take up his residence in a foreign country we would have expected him not to manifest obedience to our law. At the call of the draft board he returned to his place of residence of 26 years standing and from there was inducted into military service. The finding is also that he has ever since maintained his home in Canada. Where he made his home after service is, of course, wholly immaterial, unless it may give rise to an inference that what he subsequently did indicated an intention to take up his permanent abode in Canada when he first went there. But the testimony is that he had returned to this country, when his final application was before the board. In that situation the board, by going to the trouble of finding to the contrary, seems to erroneously stress immaterial and irrelevant facts which should not have influenced its decision.

Whether a person in leaving his home abandons his residence there and goes to another country to take up a permanent abode is, of course, to a large extent within his own breast. Relator testified positively that he had not abandoned his Cottonwood residence at the time he there entered the army. When he sought and obtained permission to visit his relatives in Canada, it was on the promise that he would return to do his duty as a resident and citizen of Minnesota. He kept his promise, and we think no inference is permissible that up to the time of his induction into the army he was a resident of any other state or country than where he resided when he registered for the draft. Giving full effect to the rule governing this court in reviewing on certiorari the acts of a board like the one here involved as expressed in Application of Hunt for Soldiers Bonus, 151 Minn. 45, 185 N. W. 943, and Rydiger v. Soldiers Bonus Board, 152 Minn. 255, 188 N. W. 557, we nevertheless are of the opinion that the conclusion of the board should be reversed.

The findings of the board are reversed and the cause is remanded to the adjutant general for further proceedings.